| | | |
|---|---|---|
| AVROHOM GOLDSTEIN, | : | |
| | : | Civ. No. 16-8587 (FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**WOLFSON, Chief Judge:**

## I.    INTRODUCTION

Petitioner Avrohom Goldstein ("Goldstein" or "Petitioner") is a federal prisoner proceeding with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.)[1]  The Government has opposed the motion.  (ECF No. 6.)  Petitioner filed a reply. (ECF No. 7.)  For the following reasons, Petitioner's § 2255 motion is denied with prejudice.

## II.    BACKGROUND

### A.  The Underlying Criminal Proceeding

On October 10, 2013, Petitioner was arrested, along with seven others, pursuant to a superseding criminal complaint (the "Criminal Complaint"), which charged him with one count of conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c).  *United States v. Goldstein,*

---

[1]      Petitioner's codefendants, Simcha Bulmash, David Hellman, and Moshe Goldstein have filed similar motions under § 2255.  *See Bulmash v. United States*, Civ. No. 16-7885 (D.N.J.); *Hellman v. United States*, Civ. No. 16-8561 (D.N.J.); *Goldstein v. United States*, Civ. No. 16-8587 (D.N.J.).  Petitioner has specifically requested to join in Bulmash's motion and relies on his submissions to support his motion.  (ECF No. 3.)  As such, the Court will refer to the submissions, including relevant exhibits, filed in the *Bulmash* matter throughout this opinion.

Crim. No. 14-117, ECF No. 4 (D.N.J.).  Petitioner's arrest was effectuated at a warehouse in Edison, New Jersey, during the execution of a sting operation by the Government (the "2013 Sting Operation").  *Id.* at 2–3.  The 2013 Sting Operation related to the Government's investigation into allegations that Petitioner and the other defendants named in the Criminal Complaint, all of whom are Orthodox Jewish men, engaged in criminal means to facilitate Orthodox Jewish divorces.

According to the Criminal Complaint, to effectuate an Orthodox Jewish divorce, a husband must provide his wife with a document known as a "get."  *Id.* at 4.  A get serves as documentary proof of the dissolution of a marriage under Jewish law, and a divorce is not official until a get is given to the wife by the husband.  *Id.*  Codefendants in this matter, Mendel Epstein, Martin Wolmark, and Jay Goldstein, who were Orthodox Jewish rabbis, were accused of charging *agunah*, women whose husbands would not provide gets, large sums of money to obtain gets from their husbands by means of violence and threats of violence.  *Id.*  Petitioner was described in the Superseding Complaint as a "tough guy" who would "participate in the actual kidnapping and assault of the recalcitrant husbands to coerce them into giving the get."  *Id.* at 5.

On March 11, 2014, Petitioner agreed to waive indictment and pleaded guilty pursuant to a plea agreement with the Government to one count of traveling in interstate commerce to commit extortion, a crime of violence, in violation of 18 U.S.C. § 1952(a) and 18 U.S.C. § 2. Crim. No. 14-117, ECF No. 125.  As part of the plea agreement, Petitioner and the Government agreed to each waive "certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255."  *Id.* at 4.  This waiver applies to "any appeal, any collateral attack, or any other writ or motion, . . . which challenges the sentence impose by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense

level of 24." *Id.* at 9.

While the charge to which Petitioner pleaded guilty related to his involvement in the 2013 Sting Operation, the Government's agreement to not initiate any further proceedings against Petitioner required that a 2011 forced get, in which he also participated, be considered as relevant conduct for the purpose of sentencing. *Id.* at 1.

The 2011 forced get occurred on August 22, 2011, when six men, including Petitioner, entered the apartment of Usher Chaimowitz and his roommate, Menachem Teitelbaum, to purportedly obtain a get from Chaimowitz. The facts of the 2011 forced get were adduced at the trial of certain codefendants, *United States v. Epstein*, Crim. No. 14-287 (D.N.J.),[2] through testimony from Teitelbaum. *Bulmash*, No. 16-7885, ECF Nos. 1-8, 3-1, 3-2, 3-3. Teitelbaum testified that on August 22, 2011, he awoke to six men in the apartment he shared with Chaimowitz "with a punch to [his] face and [his] teeth being pulled, with [his] arms and legs bound." *Bulmash*, No. 16-7885, ECF No. 1-8, at 20. Chaimowitz's arms and legs were also bound. *Id.* at 21. At some point, Teitelbaum testified that he began to fight the intruders and they pushed his head into a wall and again bound his arms and legs. *Id.* at 22–24. At the same time, Teitelbaum testified that the other intruders were "beating up" Chaimowitz and "calling out to him all the time, give a get, give a divorce, to your wife." *Id.* at 25. Teitelbaum was eventually moved to the kitchen and the intruders remained with Chaimowitz for about an hour before leaving the apartment. *Id.* at 30–33. After the intruders left the apartment, Teitelbaum testified that he had Chaimowitz take a photo on his cell phone of Teitelbaum while his arms and legs were still bound. *Id.* at 34. Teitelbaum then took photos of Chaimowitz before calling the Shomrim, the Jewish community police, and

---

[2]    The *Epstein* trial was held between March 3, 2015 and April 21, 2015. *See* Crim. No. 14-287 (D.N.J.).

the Hatzolah, the volunteer Jewish first aid department. *Id.* at 36.[3] Both Teitelbaum and Chaimowitz were taken to the hospital. *Id.* at 37. Teitelbaum alleged that four of his teeth were broken result of the incident. *Id.* at 63.

Sentencing of the codefendants named in the Criminal Complaint—twelve in total—began in November 2015. During the sentencing proceeding of codefendant Moshe Goldstein, the Court made some general comments regarding the nature of the crime applicable to all defendants. *Bulmash*, No. 16-7885, ECF No. 1-9, at 24–25. During Moshe Goldstein's sentencing hearing, the Court also set forth factual findings regarding the 2011 forced get—specifically that it "involved not only threats but assaults as well. I heard the testimony of one of the victims, the roommate, Mr. Teitelbaum, of the husband and I will say here in open court I do not credit all of his remarks which may have been embellished, *but there is no dispute that both victims were restrained, tied up, and assaulted in some manner. That is not disputed.*" *Id.* at 28 (emphasis added).

Petitioner was sentenced on November 19, 2015. Crim. No. 14-117, ECF No. 132. At Petitioner's sentencing, his counsel disputed Teitelbaum's testimony at trial, stating that, "[t]here were injures in the 2011 matter which are subject to dispute. We would contend they were somewhat embellished by the roommate in that particular case. That still does not take away the fact that there were injures." *Id.* at 9. In weighing the § 3553 factors, I made the following findings regarding the 2011 forced get:

I'll start with, obviously, the 2011 incident in which you were a

---

[3] At trial, Teitelbaum testified that while certain photos were taken immediately following the incident, some were taken after he and Chaimowitz returned home from the hospital and others were taken days after the incident. *See Bulmash*, No. 16-7885, ECF No. 1-8, at 36–54. The issue of when certain photographs were taken was further explored on cross-examination. *See, e.g.*, *Bulmash*, No. 16-7885, ECF No. 3-1, at 102, 105–08; ECF No. 3-2, at 20–23, 41, 63–64, ECF No. 3-3, at 24–26.

4

participant as well.  Again, I think for you and the others that I have seen this week, that involved yourself in the 2013 sting, the real problem here was it wasn't your first time.  You were at the 2011 incident, and you understood that there was – there could be violence in these situations.  There was.  There would be physical injury, which there was, and yet you chose to involve yourself in 2013 again.

In that 2011 incident – I know [defense counsel] was here on Monday when I talked which is why he used some of my own words about my comments about the testimony that I heard by one of the victims, Mr. Teitelbaum, Who was the roommate of the husband and not the intended victim.  Also, I found some of the things that he said from the stand, I found to be exaggerated, but there are certain basic principles that are not disputed which is that the husband and the roommate who was not the one getting the forced get were both restrained and both suffered some sort of injury, and I don't even need to get to the level of injury.

*Id.* at 20–21.  Ultimately, Petitioner was sentenced to a 45-month term of imprisonment, below the Sentencing Guidelines range of 51 to 63 months.  *Id.* at 6–7, 24.  Petitioner did not file an appeal.

**B.      The § 2255 Motion**

On November 15, 2016, Petitioner, acting *pro se*, filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (ECF No. 1.)  In the Petition, Petitioner asserts that "[n]ewly discovered evidence has been uncovered demonstrating that [Teitelbaum] in a related trial . . . lied during his trial testimony, including his testimony related to when certain photographs that were admitted into evidence were, in fact, taken, and the nature and extent of his purported injuries."  (*Id.* at 5.)  Shortly after the Petition was filed, Petitioner's trial counsel submitted a letter to the Court stating that Petitioner relied on the § 2255 motion filed by codefendant Bulmash as his motion is "equally applicable to" Petitioner.  (ECF No. 3.)

In support of his Petition, Petitioner relies upon an affidavit of Testa Shaska (the "Shaska Affidavit"), obtained and submitted to the Court by Bulmash.  Shaska interviewed Detective Joe

Solomon, of the New York City Police Department regarding the 2011 incident. *Bulmash*, No. 16-7885, ECF No. 1-13, at 1. Detective Solomon was assigned to investigate the 2011 incident. As part of his investigation, Detective Solomon inspected Teitelbaum and Chaimowitz's apartment and interviewed both regarding the incident. *Id.* The Shaska Affidavit sets forth the following details which Petitioner asserts is "newly discovered" evidence regarding the veracity of Teitelbaum's testimony:

> 5. Detective Solomon remembered Mr. Teitelbaum's appearance on August 22, 2011 and recalled that Mr. Teitelbaum's face was not "mangled" and he did not appear to be missing any teeth.
>
> 6. Detective Solomon told me that there are no photographs in the NYPD case file related to this incident. Detective Solomon also informed me that, during the first interview of Mr. Teitelbaum on August 22, 2011, he did not present Detective Solomon with any photographs or state that any photographs existed related to the incident.
>
> 7. One of two days after the incident, according to Detective Solomon, Mr. Teitelbaum arrived at the precinct and showed him pictures which Mr. Teitelbaum represented were "recreations" of the crime scene. Detective Solomon told me that he informed Mr. Teitelbaum that he could not include those photographs in the case file because they were not actual crime scene photographs.

*Id.* at 2. Shaska showed Detective Solomon the photos that were admitted at trial of Teitelbaum and he "confirmed that these photos were the ones that Mr. Teitelbaum showed him . . . and represented to be 'recreations' of the event." *Id.*

In its Answer, the Government argues that not only is this evidence not "newly discovered" as this issue came out during the cross-examination of Teitelbaum at trial, even if it were, it would not entitle Bulmash to a new sentence. (ECF No. 6, at 18–25.) The Government also requests that this Court enforce the waiver of appeal and collateral attack rights set forth in Petitioner's plea agreement. (*Id.* at 26–34.)

### III.    LEGAL STANDARD

To grant relief on a federal prisoner's motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (quoting *United States v. Addonizio*, 445 U.S. 178, 185 (1979)). Accordingly, a petitioner who attacks his sentence "based on some error in the sentencing proceeding [must] allege (1) that the district court received 'misinformation of a constitutional magnitude' and (2) that the district judge relied at least in part on that misinformation.'" *Id.* (citing *United States v. Spiropoulos*, 976 F.2d 155, 163 (3d Cir. 1972)).

"In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542. 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62.)

### IV.    DISCUSSION

The Government argues that Petitioner is not entitled to relief under § 2255 because he waived his right to bring a collateral attack motion by entering into the plea agreement. Petitioner contends that the appeal and collateral attack waiver in his plea agreement is not enforceable because enforcement of the waiver would work a miscarriage of justice.

The Third Circuit has held that "[c]riminal defendants may waive both constitutional and

statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), *abrogated in part on other grounds*, *Garza v. Idaho*, 139 S. Ct. 738 (2019). This includes the defendant's right to file an appeal or a collateral attack motion under 28 U.S.C. § 2255. *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015).

A defendant's waiver is enforceable so long as it was "entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." *Mabry*, 536 F.3d at 237. While "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record before it." *Id.* at 238.

## A. Knowing and Voluntary Waiver

The language of the plea agreement is unambiguous in its waiver of Petitioner's appellate and collateral attack rights provided he received a sentence at or below the Guidelines range set forth in the plea agreement. The plea agreement plainly sets forth that Petitioner

> voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 24.

Crim. No. 14-101, ECF No. 125, at 9. The plea agreement further confirms that Petitioner reviewed the agreement with his attorney and that he "understands this letter fully." *Id.* at 6.

The Court confirmed that Petitioner entered into this waiver knowingly and voluntarily during the plea hearing:

> THE COURT: Your plea agreement also provides that under certain

circumstances, you are waiving or giving up your right to file an appeal or collaterally attack the sentence imposed in this case.

Are you familiar with those circumstances?

THE DEFENDANT: Yes.

THE COURT: I will ask you some questions in that regard at this time.

Do you understand that the law permits you and the government to file an appeal of your sentence if either you or the government believe that there had been an error?

THE DEFENDANT: Yes.

THE COURT: Do you also understand you have a right, if you believe there had been an error, to file a post-conviction challenge to your conviction or sentence?

THE DEFENDANT: Yes.

THE COURT: Do you understand both you and the government are giving up the right to file an appeal or post-conviction challenge under certain circumstances that are set forth in the plea agreement itself and in Schedule A to the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Specifically, do you understand that if I impose a term of imprisonment that falls within or below the Guideline ranges that result from a Guideline offense level of 24, you cannot appeal or challenge your sentence?

THE DEFENDANT: Yes.

THE COURT: Do you understand the United States cannot appeal if your prison sentence is within or above the Guideline ranges that result from a Guideline offense level of 24?

THE DEFENDANT: Yes.

THE COURT: And do you understand that neither you nor the United States can appeal claiming that I should not have accepted your stipulations in the plea agreement?

THE DEFENDANT: Yes.

THE COURT: And did you discuss this waiver of appeal and waiver of your right to file for post-conviction relief with your attorney?

THE DEFENDANT: Yes.

> THE COURT: Are you satisfied with the explanations that he has provided to you?
>
> THE DEFENDANT: Yes.

Crim. No. 14-117, ECF No. 135, at 12–13.

Having reviewed the plea colloquy, the Court is satisfied that Petitioner's waiver of his right to file an appeal or collateral attack waiver was knowing and voluntary. Petitioner affirmed to the Court that his counsel had explained to him the consequences of the appeal and collateral attack waiver, and that he understood the consequences of entering into the plea agreement. This is sufficient to confirm that Petitioner's waiver was knowing and voluntary. *See United States v. Khattak,* 273 F.3d 557, 563 (3d Cir. 2001) (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired under Federal Rule of Criminal Procedure 11 and as to whether the defendant received a sentence within the terms of his plea agreement); *Muhammad v. United States*, No. 08-0061, 2010 WL 2771772, at *3 (D.N.J. July 13, 2010); *Colon v. United States,* No. 05-123-2, 2009 WL 37487, at *2 (E.D. Pa. Jan. 5, 2009) (holding that defendant's waiver of his right to appeal or collaterally attack his conviction or sentence is enforceable because there was no support in the record that he acted unknowingly or involuntarily).[4]

---

[4]      To the extent Petitioner joins codefendant Bulmash's § 2255 motion, he similarly cannot demonstrate that his assent to the waiver was not knowing and voluntary because he was unaware of the extent to which Teitelbaum's testimony was embellished. As I explained in this Court's opinion on Bulmash's motion, information impeaching a particular witness is not the type of "critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002); *see also Parry v. Rosemeyer*, 64 F.3d 110, 114 (3d Cir. 1995) ("A plea of guilty will not be found to be unknowing and involuntary in the absence of proof that the defendant was not advised of, or did not understand, *the direct consequences* of his plea." (emphasis added)); *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (noting that a defendant need not be advised of "collateral consequences" of a plea and defining such a consequence as "one that is not related to the length or nature of the sentence imposed on the basis of the plea"). The fact that Petitioner was apparently unaware that certain aspects of Teitelbaum's testimony was embellished does not call into question the knowing and voluntary nature of the

Accordingly, Petitioner's appeal waiver is enforceable as knowing and voluntary so long as its enforcement would not work a miscarriage of justice.

**B.      Miscarriage of Justice**

To determine whether a miscarriage of justice would occur as a result of enforcement of a waiver of appeal and collateral attack rights, courts consider, among other things, the following factors:

> The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak*, 273 F.3d at 563 (3d Cir. 2001) (alteration in original) (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).  A miscarriage of justice may occur where "enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement" or where there are "allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver."  *Mabry*, 536 F.3d at 243.  Moreover, "[i]t is not enough than issue [is] meritorious; after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider."  *United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014) (alterations in original) (quoting *United States v. Castro*, 704 F.3d 125, 136 n.6 (3d Cir. 2013)).  Courts should employ "a common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver."  *Mabry*, 536 F.3d at 242–43.

With respect to application of the *Khattak* factors, the Court refers to, and incorporates, its opinion on codefendant Bulmash's § 2255 motion, in which it determined that Petitioner's claim

---

plea agreement or the appeal and collateral attack waiver.

that the newly discovered evidence contained in the Shaska Affidavit compels him to be resentenced lacks merit, and is not so grave of an error to bypass the collateral attack waiver. For the sake of completeness, and out of an abundance of caution, the Court will additionally address the arguments raised by Petitioner regarding the application of the *Khattak* factors.

A motion for a new trial based on newly discovered evidence will be granted where the following requirements are met:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since trial;
>
> (b) facts must be alleged from which the court may infer diligence on the part of the movant;
>
> (c) the evidence relief on, must not be merely cumulative or impeaching;
>
> (d) it must be material to the issues involved; and
>
> (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010). While the Third Circuit has not determined what requirements must be met to entitle a petitioner to resentencing based on newly discovered evidence, other courts have applied the same factors as for a new trial and substituted the last factor for whether the newly discovered evidence "would probably result [in] a more favorable sentence." *Swiss v. United States*, Crim. No. 08-76, 2008 WL 820269, at *1 (D.N.C. Mar. 20, 2008) (quoting *United States v. Corson*, No. 01-228, 2002 WL 547213, at *3 n.2 (D. Maine Apr. 10, 2002)); *see also Ajemian v. United States*, 171 F. Supp. 3d 206, 211 (S.D.N.Y. 2016) (ordering a hearing on amount of loss based on newly discovered evidence where correction

of alleged error would possibly entitle petitioner to a reduced sentence).[5]

First, this Court must determine whether the information contained in the Shaska Affidavit constitutes "newly discovered" evidence. "The test to determine whether evidence is 'newly discovered' is both objective and subjective: Evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" *United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006). Here, Petitioner argues that the evidence proffered is "newly discovered" simply because it was obtained after the sentencing hearing in this matter. Petitioner further maintains that he acted diligently in obtaining the information because he could not have conceivably known it was necessary to investigate the veracity of Teitelbaum's testimony until this Court, at sentencing, opined that portions of that

---

[5]     Petitioner argues that this standard should not apply to a motion for resentencing brought under § 2255. (ECF No. 7, at 7–9.) Instead, Petitioner argues that vacatur of a sentence is appropriate where "an error of law or fact constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure.'" (*Id.* at 8 (quoting *Romero v. United States*, No. 12-0003, 2016 WL 2994091, at *2 (D.N.J. May 24, 2016).) In support of this argument, Petitioner relies on *Ajemian*, 171 F. Supp. 3d 206, which he argues did not apply the above standard for resentencing based on newly discovered evidence and instead applied the standard advocated for by Petitioner. Petitioner's argument is not persuasive. First, before considering the merits of Ajemian's claims, the *Ajemian* court set forth a standard similar to that recited above for a newly discovered evidence claim in a § 2255 proceeding. *See id.* at 211 ("'New evidence in a Section 2255 proceeding . . . is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner.' The petitioner bears the burden of convincing this court that the newly-discovered evidence 'would have resulted in an acquittal.'" (citations omitted)). While the *Ajemian* court did not explicitly apply this standard in determining whether the newly discovered evidence in that case warranted resentencing, it is similarly not apparent that it applied the more lenient standard Petitioner argues should apply here. *See id.* at 211, 215.

Moreover, Petitioner's claim similarly fails under the vacatur of sentence standard. Petitioner has failed to show that any error of fact was made at his sentencing proceeding. As the Court has noted, Petitioner admitted to certain undisputed facts regarding the 2011 forced get. These undisputed facts were not called into question by the Shaska Affidavit. Accordingly, Petitioner cannot demonstrate that any "fundamental defect" affected his sentence.

testimony was potentially fabricated. I disagree. Petitioner was aware that the 2011 forced get would be considered relevant conduct for the purpose of determining his sentence and, thus, it would be necessary for this Court to make findings of fact regarding the conduct underlying that offense. Moreover, Petitioner has not demonstrated that this evidence could not have been discovered prior to either his assent to the plea agreement or the sentencing proceedings. In fact, this evidence was readily available. Petitioner has offered no reason why he could not have contacted the New York Police Department or Detective Solomon prior to sentencing. The embellishments in Teitelbaum's testimony were also apparent during the *Epstein* trial, which was a matter of public record to which Petitioner had access. Teitelbaum stated multiple times during his testimony that not all the photos he took were taken immediately following the incident but that some were taken "before the hospital, some after the hospital, and some three days later as well." (ECF No. 1-8, at 46.) Petitioner could have obtained this information prior to his sentencing. Simply because Petitioner conducted his investigation post-sentencing and this information is new to him does not render it "newly discovered" for the purpose of obtaining relief under § 2255. *See Cimera*, 459 F.3d at 461.

Moreover, the Shaska Affidavit does not call into question any material testimony on which this Court relied in issuing Petitioner's sentence. The Shaska Affidavit only questions the veracity of two issues: (1) when the photographs of Teitelbaum that were admitted at trial were taken and (2) the extent of Teitelbaum's injuries. (*See* ECF No. 1-13.) These were not material issues this Court considered when sentencing Petitioner. Indeed, the Shaska Affidavit does not call into question the findings the Court made at sentencing regarding the facts underlying the 2011 forced get. Certain facts regarding the 2011 forced get, on which the Court relied to sentence Petitioner, are undisputed: Petitioner and six others entered the apartment of Teitelbaum and Chaimowitz

14

with the intent of obtaining a get from Chaimowitz through the use of threatened and actual force. Petitioner and his codefendants, carried out that intent. Petitioner admitted to these undisputed facts during his plea hearing:

> THE COURT: On or about August 22, 2011, did you and a number of co-conspirators go to a residence in Brooklyn, New York?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you go to the residence in Brooklyn with the intent of forcing a Jewish man – who I'll refer to as Husband 1 – to give his wife a get?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Did you and your co-conspirators intend to physically confine or restrain Husband 1 in order to obtain the get?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you and your co-conspirators intend to threaten Husband 1 with bodily injury to obtain the get?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you and/or your co-conspirators, in fact, restrain Husband 1 to obtain the get?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you and/or your co-conspirators, in fact, threaten Husband 1 with bodily injury to obtain the get?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you and/or your co-conspirators, in fact, injure Husband 1?
>
> THE DEFENDANT: Yes.

Crim. 14-117, ECF No. 135, at 23–25. I expressed at Petitioner's sentencing that I did not find

Teitelbaum's testimony credible and that I credited only certain undisputed aspects of that testimony. The Shaska Affidavit does not call into question those findings in any way. If anything, the Shaska Affidavit constitutes mere impeachment evidence that goes to Teitelbaum's credibility. This is not enough to entitle Petitioner to a new sentence. *See United States v. Onque*, 169 F. Supp. 3d 555, 581 (D.N.J. 2015) (observing that impeachment evidence is insufficient to demonstrate that testimony given by a material witness was false for the purpose of granting a new trial based on perjured testimony). Because this Court finds Petitioner's basis for relief under § 2255 lacking in merit, the first *Khattak* factor weighs in favor of enforcement of the appellate waiver.

As in *Bulmash*, the remaining *Khattak* factors weigh in favor of enforcing the waiver. The second and third factors—the impact on Petitioner and the Government weigh in favor of enforcement. The impact of enforcing the appellate agreement ensures both Petitioner and the Government receive the benefit of their bargain made by entering in the plea agreement. *See United States v. Abuhouran*, 119 F. App'x 402, 404 (3d Cir. 2005). While Petitioner argues that the impact on him would be severe as the "fundamental fairness" of his sentencing was allegedly impacted by the Court's reliance on Teitelbaum's testimony, I disagree. As the Court has explained, the Shaska Affidavit does not call into question any material testimony relied upon by the Court that would render the sentencing proceeding unfair.

Moreover, the fourth *Khattak* factor—Petitioner's acquiescence in the result—weighs in favor of enforcement of the appeal waiver. As set forth in detail above, Petitioner "fully acquiesced in the plea agreement and the waiver of his collateral appeal rights." *See Jones v. United States*, No. 13-3748, 2016 WL 81253, at *5 (D.N.J. Jan. 7, 2016). Indeed, by assenting to the terms of the waiver, Petitioner was permitted to plead guilty to the lesser charge of extortion, as opposed to conspiracy to commit kidnapping. *Accord Mabry v. Shartel*, 632 F. App'x 707, 711 (3d Cir. 2015).

A miscarriage of justice would not result if the Court enforced the waiver as set forth in the plea agreement. Petitioner has not demonstrated any unusual circumstance which would enable this Court to nullify the waiver. Indeed, Petitioner's motion "does 'not implicate fundamental rights or constitutional principles'" and his challenge to his below-the-Guidelines range sentence "is precisely the type of appeal his appellate waiver was intended to foreclose." *See Grimes*, 739 F.3d 125, 131 (3d Cir. 2014). Accordingly, Petitioner's § 2255 motion is denied.

## V.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a litigant may not appeal a final order in a § 2255 proceeding unless the judge or a circuit justice issues a certificate of appealability ("COA"). That section further directs courts to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* 28 U.S.C. § 2255(d). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner is not entitled to relief.

## VI.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion is denied with prejudice.  Although courts considering § 2255 motions are generally directed to hold evidentiary hearings, it is apparent from the arguments before the Court and the record of the underlying criminal proceeding that, regardless of the evidence adduced at such a proceeding, Petitioner would not be entitled to any relief based on his motion.  *See Booth*, 432 F.3d at 545.  An appropriate order will be entered.


DATED:  May 20, 2019


/s/ Freda L. Wolfson
FREDA L. WOLFSON
US CHIEF DISTRICT JUDGE